Jason D. Guinasso, Esq. (SBN 8478)
Alex Velto, Esq. (SBN 14961)
HUTCHISON & STEFFEN, PLLC
5371 Kietzke Lane
Reno, Nevada 89511
Tel: (775) 853-8746
Fax: (775) 201-9611
jguinasso@hutchlegal.com
avelto@hutchlegal.com.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| VICTOR VALENZUELA, an individual<br><br>Plaintiff,<br><br>vs.<br><br>GK NEVADA, LLC, a Nevada LLC, dba CENTENNIAL TOYOTA; JASON MEIXNER, an individual, CLIFF NUAENBERG, an individual, and DOES 1-10, inclusive, and ROES 1-10, inclusive<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**(JURY DEMAND)** |

Plaintiff, VICTOR VALENZUELA, by and through its counsel of record, Hutchison & Steffen, PLLC, and hereby requests a jury trial relative to all issues triable as follows:

**THE PARTIES**

1. Plaintiff VALENZUELA is and was at all times relevant to this action a resident of the State of Nevada. At all times relevant, plaintiff resided in Clark County, Nevada and at all times relevant to this action, was employed by defendant CENTENNIAL, and is a "person" within the meaning of 42 U.S.C. § 2000e(a) and 29 U.S.C. § 630(a).

2. Upon information and belief, defendant CENTENNIAL is a Fictitious Business, organized and existing under, and by virtue of, the laws of the State of Nevada, and licensed to do business, within the State of Nevada.

3. Upon information and belief, GK is a Nevada LLC that owns and operates

1

CENTENNIAL TOYOTA, organized and existing under, and by virtue of, the laws of the State of Nevada, and licensed to do business, within the State of Nevada.

4. Upon information and belief, JASON MEIXNER, is an individual living within the State of Nevada.

5. Upon information and belief, CLIFF NUAENBERG, is an individual living within the State of Nevada.

6. Upon information and belief, at all times relevant to this action, defendant CENTENNIAL was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b) because it employed 20 or more individuals on a full-time basis in excess of 20 weeks per year.

7. VALENZUELA does not know the names and capacities, whether a business entity, governmental, or individual of those defendants sued herein as DOES 1-10 and ROES 1-10, inclusive, plaintiff prays leave that when the true names and capacities of said defendants are ascertained, he may be permitted to insert the same herein with appropriate allegations; but upon information and belief, plaintiff alleges that each of said defendants is legally responsible at all times alleged herein. Relief is sought herein against each and all defendants, as well as its or their agents, assistants, successors, employees, and all persons acting in concept or cooperation with them or at their direction.

8. That each of the defendants is the agent, servant, employee, representative, principal, master, supervisor and/or employer of each of the other defendants; each Defendant was acting within the service and scope of that agency, employment or other relationship at all times alleged herein. Relief is sought herein against each and all Defendants, as well as its or their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction.

## JURISDICTION AND VENUE

9. VALENZUELA brings this action under 42 U.S.C. § 2000 *et. seq.*, 29 U.S.C. § 630 *et. seq.*, and 29 U.S.C. § 621 *et. seq.*, Nev. Rev. Stat. § 613.330, Nev. Rev. Stat. § 613.340 to remedy acts of employment discrimination perpetrated against him by CENTENNIAL. VALENZUELA contends that CENTENNIAL discriminated against him on the basis of race, color, national origin, and age. VALENZUELA further asserts that CENTENNIAL retaliated against him for having complained about such discrimination, retaliation, and unfair treatment.

//

10. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391; as VALENZUELA was employed with CENTENNIAL, in Nevada at the time of the alleged discrimination, VALENZUELA's employment records are maintained by CENTENNIAL in this judicial district, VALENZUELA conducts business in this judicial district, and decisions adverse to VALENZUELA's employment that are subject of this civil action were made in this judicial district.

## PROCEDURAL REQUIREMENTS

12. VALENZUELA has satisfied all administrative and jurisdictional requirements necessary to maintain this lawsuit. VALENZUELA has timely filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 28, 2022. A true and correct copy of Plaintiff's Charge of Discrimination attached hereto as **Exhibit 1**. Such allegations of **Exhibit 1** are hereby incorporated herein this Complaint.

13. On or about June 29, 2023, VALENZUELA received a Notice of Right-to-Sue issued by EEOC. A true and correct copy of VALENZUELA' Right to Sue attached hereto as **Exhibit 2**.

14. This Complaint has been filed within 90 days of receipt of that Notice. VALENZUELA has fully complied with all prerequisites to jurisdiction of the Court.

## FACTUAL ACCOUNT

15. On or about April 30, 2013, VALENZUELA was hired by CENTENNIAL. He began working as a Sales Manager and was quickly promoted to Spanish Advertising Manager.

16. VALENZUELA is of Cuban descent.

17. VALENZUELA has been in the car business since 1985.

18. A significant portion of VALENZUELA's position with CENTENNIAL was to advertise to Hispanic people.

19. During his time at CENTENNIAL, VALENZUELA was the face of the dealership.

20. VALENZUELA was featured in commercials, being referred to as "El Jefe" as an advertising strategy.

21. VALENZUELA ranked high in sales at CENTENNIAL and led all Spanish speaking salesmen in sales.

22. During his time at CENTENNIAL, VALENZUELA was supervised by General

3

Manager Jason Meixner ("Meixner") and Assistant General Manager Cliff Nuaenberg ("Nuaenberg").

23. Prior to Nuaenberg's employment, the Sales Manager was James Gardnier ("Gardnier").

24. Nuaenberg, Meixner's brother-in-law, was hired by Meixner after Gardnier's exit.

25. During his time at CENTENNIAL, Gardnier discovered that the General Manager prior to Meixner was hiding, transferring, and messing with money. Gardnier was pushed to quit by CENTENNIAL because he knew too much about the prior General Manager's wrongdoing.

26. Gardnier died of an overdose. CENTENNIAL's management purchased the tombstone for Gardnier, worth $10,000, to keep Gardnier's wife quiet regarding the prior General Manager's wrongdoing.

27. Almost daily, Meixner and Nuaenberg called VALENZUELA names such as "old man", "old fart", and "worthless."

28. At some time between 2021-2022, CENTENNIAL hired a new company to help advertise. VALENZUELA had an advertising budget of $7,900, but this new company had an advertising budget of $15,000. This company was getting paid almost double the amount VALENZUELA was getting paid, for the same amount of time of labor and advertising. VALENZUELA decided to speak with Meixner regarding the budgetary changes. Meixner called VALENZUELA "old man" in response to VALENZUELA's concerns.

29. On at least one occasion, Nuaenberg and/or Meixner hit VALENZUELA on his butt.

30. Almost daily, due to VALENZUELA's largely Hispanic clientele, Nuaenberg called VALENZUELA and his clients names such as "beaners", "wet-backs", "sand n-words", "bitch", and "queer."

31. On several occasions, Meixner used code numbers to refer to black and Hispanic clients. Meixner preferred to do this so he would not have to refer to those clients by name but could refer to them instead by the code number. In doing so, he would make fun of those clients without them knowing.

32. VALENZUELA wrote a letter to the owner of CENTENNIAL, Howard Keyes, regarding how he was being harassed. He was reprimanded by Meixner for doing so. Nuaenberg called VALENZUELA into his office and said, "I think you're the snitch bastard".

4

33. About 1-2 months before VALENZUELA was constructively terminated, VALENZUELA slipped and fell at CENTENNIAL and nearly cracked his skull by hitting his head on the ground. Meixner neglected to call an ambulance for VALENZUELA. Instead, a coworker took VALENZUELA to the hospital.

34. VALENZUELA's healthcare provider informed VALENZUELA that he could have died. VALENZUELA was out of work for about two weeks. During this time, Meixner called VALENZUELA on several occasions, making statements such as "you're fine" and pressured him to return to work sooner.

35. On several occasions, VALENZUELA has seen Meixner, Nuaenberg, and other coworkers at CENTENNIAL doing drugs such as cocaine.

36. VALENZUELA has complained multiple times to supervisors and received no response or action.

37. VALENZUELA was discriminated against because of his race and refusal to join the employees and supervisors at CENTENNIAL in doing drugs.

38. VALENZUELA has seen Meixner go to his car to sleep for a short period of time during work hours.

39. Throughout VALENZUELA's employment at CENTENNIAL, he was constantly harassed due to his race, suffering extensive verbal abuse in racial nature and he was excluded from important aspects of his employment on account of his race.

40. The harassment at the hands of his supervisors at CENTENNIAL for multiple years but intensified at the end of his employment at CENTENNIAL.

41. VALENZUELA suffered from a great deal of stress and anxiety. He relied on his employment with CENTENNIAL to provide for his family, so he was unable to leave his role at CENTENNIAL. As time went on, his depression grew to be more unbearable, and his stress and anxiety started manifesting into physical symptoms.

//

42. About three weeks before VALENZUELA was constructively terminated, VALENZUELA's hands and one of his feet started to shake, he could not sleep or eat, and he lost 45 pounds.

5

43. VALENZUELA went to a neurologist, who informed VALENZUELA that these were neurological side effects attributed to stress and anxiety he started incurring from his employment at CENTENNIAL.

44. The neurologist told VALENZUELA that he believes he would be dead but for his great health prior to attaining these stress levels.

45. VALENZUELA is now prescribed medication to treat his depression and physical symptoms, but he continues to suffer extensive debilitating physical ailments from the discrimination and stressful environment at CENNTENTIAL.

46. On or about May 22, 2022, VALENZUELA could no longer work at CENTENNIAL. He was 61 years old when he quit, and his depression, anxiety, and stress was at an all-time high after years of daily harassment from both Meixner and Nuaenberg. His body was shutting down.

47. In the seven years prior to Meixner and Nuaenberg joining CENTENNIAL as General Manager and Assistant General Manager, VALENZUELA enjoyed working at CENTENNIAL. There are approximately 300,000 positive reviews written about him.

48. After his employment at CENTENNIAL, VALENZUELA began working at a Nissan dealership for three months. At CENTENNIAL, VALENZUELA's income on a yearly basis was $230,000 to $250,000. However, at Nissan, he makes $7,000 to $8,000 less per month than he did at CENTENNIAL. He is being treated fairly at Nissan, but he is still experiencing symptoms from his stress and depression caused by his experience at CENTENNIAL and is uncertain as to how long he can continue working.

49. Several other employees have filed EEOC complaints against Meixner and Nuaenberg regarding harassment in the workplace due to their ethnicity.

**FIRST CLAIM FOR RELIEF**
**(Unlawful Employment Practices: Race Discrimination)**

50. VALENZUELA incorporates by reference the allegations set forth above and below and alleges the following:

51. At all times relevant, VALENZUELA was and is an employee, as defined by Title VII, and NRS 608.010.

52. At all times relevant, CENTENNIAL is an "employer(s)" as defined by Title VII and

6

NRS 608.011.

53. At all times relevant, CENTENNIAL is, and was VALENZUELA's employer and, as such, was barred from discriminating in employment decisions on the basis of race, color, and national origin as set forth in NRS 613.330, *et seq*. and 42 U.S.C. 2000 *et. seq*.

54. Pursuant to Title VII of the Civil Rights Act, as amended, and NRS 613.330, it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any person, or otherwise discriminate against any person with respect to the persons compensation, terms, conditions, or privileges of employment, because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin.

55. VALENZUELA is a male and thus belongs to the class of individuals protected by NRS §613.330, *et seq.* and 42 U.S.C. 2000e *et. seq*.

56. VALENZUELA had the qualifications necessary to adequately perform his job duties.

57. VALENZUELA was performing his job duties according to his employer's legitimate expectations.

58. Under the applicable laws cited herein, CENTENNIAL has the obligation to provide a workplace free of discrimination and harassment on the basis of race, color, and national origin. Plaintiff has the same right to the full and equal benefit of the laws and proceedings for the security of persons and property as enjoyed by all employees.

59. During the course of his employment, VALENZUELA was subjected to discrimination, harassment, and differential treatment by CENTENNIAL, its employees, management, agents, employees, and/or representatives, because of his race and color.

60. Specifically, VALENZUELA was discriminated against and received disparate treatment from other colleagues with constant daily verbal harassment for over a four-year period.

61. As a result of the harassment, VALENZUELA reported Nuaenberg and Meixner's behavior to the owner of CENTENNIAL, however, instead of properly investigating and taking appropriate action to stop the harassment, VALENZUELA was reprimanded, and the harassment only became stronger and more frequent.

62. The conduct of CENTENNIAL described in this Complaint constitutes unlawful discrimination in violation of Nev. Rev. Stat. § 613.330 and 42 U.S.C. 2000e *et.*

*seq.*, i.e., discrimination, and differential treatment on the basis of race, color, and national origin.

63. As a direct result of CENTENNIAL's unlawful, discriminatory conduct, VALENZUELA suffered financial harm and emotional distress. The above-described acts of CENTENNIAL were further made intentionally and done with a conscious disregard for Plaintiff's protected rights.

64. CENTENNIAL's conduct directly and proximately caused VALENZUELA to suffer severe emotional and physical distress for which he is entitled to compensatory damages in excess of $15,000.00, and in an amount to be determined by trial.

65. VALENZUELA is entitled to all legal and equitable remedies available under Nev. Rev. Stat. § 613.330, and 42 U.S.C § 2000e *et seq*, Title VII of the Civil Rights Act.

66. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

### SECOND CLAIM FOR RELIEF
### (Unlawful Employment Practices: Age Discrimination)

67. VALENZUELA incorporates by reference the allegations set forth above and below and alleges the following:

68. At all times relevant, VALENZUELA was and is an employee, as defined by Title VII, and NRS 608.010.

69. At all times relevant, CENTENNIAL is an "employer(s)" as defined by Title VII and NRS 608.011.

70. At all times relevant, CENTENNIAL is, and was VALENZUELA's employer and, as such, was barred from discriminating in employment decisions on the basis of age as set forth in NRS 613.330, *et seq*. and 42 U.S.C. 2000 *et. seq*.

71. Pursuant to Title VII of the Civil Rights Act, as amended, and NRS 613.330, it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any person, or otherwise discriminate against any person with respect to the persons compensation, terms, conditions, or privileges of employment, because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin.

72. VALENZUELA is a male and thus belongs to the class of individuals protected by NRS

§613.330, *et seq.* and 42 U.S.C. 2000e *et. seq.*

73. VALENZUELA had the qualifications necessary to adequately perform his job duties.

74. VALENZUELA was performing his job duties according to his employer's legitimate expectations.

75. Under the applicable laws cited herein, CENTENNIAL has the obligation to provide a workplace free of discrimination and harassment on the basis of age. Plaintiff has the same right to the full and equal benefit of the laws and proceedings for the security of persons and property as enjoyed by all employees.

76. During the course of his employment, VALENZUELA was subjected to discrimination, harassment, and differential treatment by CENTENNIAL, its employees, management, agents, employees, and/or representatives, because of his age.

77. Specifically, VALENZUELA was discriminated against and received disparate treatment from other colleagues with constant daily verbal harassment for over a two-year period.

78. As a result of the harassment, VALENZUELA reported Nuaenberg and Meixner's behavior to the owner of CENTENNIAL, however, instead of properly investigating and taking appropriate action to stop the harassment, VALENZUELA was reprimanded, the harassment only became stronger and more frequent, and he was ultimately constructively discharged.

79. The conduct of CENTENNIAL described in this Complaint constitutes unlawful discrimination in violation of Nev. Rev. Stat. § 613.330 and 42 U.S.C. 2000e *et. seq.*, i.e., discrimination, and differential treatment on the basis of age.

80. As a direct result of CENTENNIAL's unlawful, discriminatory conduct, VALENZUELA suffered financial harm and emotional distress. The above-described acts of CENTENNIAL were further made intentionally and done with a conscious disregard for Plaintiff's protected rights.

81. CENTENNIAL's conduct directly and proximately caused VALENZUELA to suffer loss of wages, loss of earning capacity, as well as severe emotional and physical distress for which he is entitled to compensatory damages in excess of $15,000.00, and in an amount to be determined by trial.

//

82.     VALENZUELA is entitled to all legal and equitable remedies available under Nev. Rev. Stat. § 613.330, and 42 U.S.C § 2000e *et seq,* Title VII of the Civil Rights Act.

83.     VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

### THIRD CLAIM FOR RELIEF
### (Constructive Discharge)

84.     VALENZUELA incorporates by reference the allegations set forth above and below and alleges the following:

85.     CENTENNIAL's agents, over the course of four years while VALENZUELA was employed at CENTENNIAL, have discriminated against VALENZUELA by way of racial abuse and daily harassment due to VALENZUELA's race, color, national origin, and age.

86.     VALENZUELA has made numerous attempts to complain about the discriminatory conduct from CENTENNIAL's agents to CENTENNIAL, which has only been met by more harassment and discrimination.

87.     As a result of CENTENNIAL and its' agents' conduct, VALENZUELA suffered a loss of wages, loss of earning capacity, as has been suffering from severe emotional and physical distress for which he is entitled to compensatory damages in excess of $15,000.00, and in an amount to be determined at trial.

88.     CENTENNIAL's actions were intentional, deliberate, willful, malicious, and conducted in a callous disregard for the harm caused to VALENZUELA.

89.     CENTENNIAL has forced VENEZUELA to quit his job at CENTENNIAL as a result of the intolerable and discriminatory working conditions towards him.

90.     VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

### FOURTH CLAIM FOR RELIEF
### (Wrongful Termination)

91.     VALENZUELA incorporates by reference the allegations set forth above and below and alleges the following:

92.     VALENZUELA had the qualifications necessary to adequately perform his job duties.

93.     VALENZUELA was performing his job duties according to his employer's legitimate

expectations and was a top ranked salesman at the company.

94. CENTENNIAL did not have cause to terminate VALENZUELA, nor did VALENZUELA ever behave in a disruptive manner, despite facing constant discrimination against him in the workplace.

95. CENTENNIAL, by way of constructive discharge, has wrongfully terminated VALENZUELA from employment at CENTENNIAL.

96. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

### **FIFTH CLAIM FOR RELIEF**
**(Retaliation)**

97. VALENZUELA incorporates by reference the allegations set forth above and below and alleges the following:

98. As set forth more fully above, CENTENNIAL retaliated against VALENZUELA when he opposed discrimination and unlawful conduct.

99. VALENZUELA's employment began on or about April 30, 2013. During his tenure he was promoted to Spanish Advertising Manager.

100. Over VALENZUELA's tenure with CENTENNIAL, VALENZUELA engaged in legally protected conduct by writing a letter to the owner of the CENTENNIAL dealership, Howard Keyes, to address issues of constant harassment and discriminatory actions based on his race, color, national origin, and age.

101. CENTENNIAL retaliated against VALENZUELA in violation of NRS §613.340 and 42 U.S.C. § 2000e *et seq,* Title VII of the Civil Rights Act, by taking adverse employment action against VALENZUELA, including, but not limited to, reprimanding him, continuing the harassment, and constructively discharging him from working at CENTENNIAL.

102. CENTENNIAL retaliated against VALENZUELA because VAELNZUELA opposed that which he reasonably and in good faith believed to be unlawful discrimination and harassment in his employment, and also because he complained about said harassment and discrimination.

103. Defendant CENTENNIAL's conduct directly and proximately caused VALENZUELA to suffer loss of wages, loss of earning capacity, as well as severe emotional and physical distress for

which he is entitled to compensatory damages in excess of $15,000.00, and in an amount to be determined at trial.

104. CENTENNIAL's actions were intentional, deliberate, willful, malicious, and conducted in a callous disregard for the harm caused to VALENZUELA.

105. VALENZUELA is entitled to all legal and equitable remedies available under NRS §613.340, and 42 U.S.C § 2000e *et seq*, Title VII of the Civil Rights Act.

106. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

### SIXTH CLAIM FOR RELIEF
### (Hostile Work Environment)

107. VALENZUELA incorporates by reference the allegations set forth above and below and alleges as follows:

108. CENTENNIAL's agents subjected VALENZUELA to a hostile, intimidating work environment by harassing him daily on the bases of race, color, national origin, and age, over a four year period, and discriminating against him and his clientele on the basis of race and color.

109. CENTENNIAL's agents' comments and actions and adverse actions against VALENZUELA occurred in several messages, verbal conversations and in-person interactions.

110. CENTENNIAL and its agents' conduct was so severe and pervasive that it significantly altered the condition of VALENZUELA's employment with CENTENNIAL, affected his psychological wellbeing, and eventually led to his wrongful termination.

111. In addition, the conduct was sufficiently severe and pervasive to create an abusive work environment, and unreasonably interfered with VALENZUELA's work.

112. CENTENNIAL and its agents further intentionally subjected VALENZUELA to harassment and discriminatory conduct based on his race, color, national origin, and age.

113. As a direct and proximate result of the breach of its duties owed to VALENZUELA to prevent such conduct, CENTENNIAL's agents, servants, or employees unlawfully and willfully subjected VALENZUELA to discriminatory treatment and retaliation in violation of state law.

114. As a result of CENTENNIAL's conduct, VALENZUELA has been damaged in excess of $15,000.00, and in an amount to be determined at trial.

115. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

**SEVENTH CLAIM FOR RELIEF**
**(Intentional Infliction of Emotional Distress)**

116. VALENZUELA incorporates by reference the allegations set forth above and below and alleges as follows:

117. The conduct as described more fully above of Defendant CENTENNIAL, its agents, employees, and/or representatives, were extreme and outrageous and done for the purpose of injuring VALENZUELA.

118. As a direct and proximate result of Defendant CENTENNIAL's conduct, VALENZUELA suffered emotional distress which caused and will continue to cause VALENZUELA's extreme mental and nervous pain and suffering.

119. As a direct and proximate result of CENTENNIAL's acts and conduct, CENTENNIAL incurred and continues to incur medical expenses, possible future medical expenses, loss of earnings, and loss of enjoyment of life, all to said VALENZUELA's general damages in an amount to be determined at trial.

120. The conduct of CENTENNIAL, its agents, employees, and/or representatives were intentional, malicious, willful, and outrageous and therefore, constitutes an intentional infliction of emotional distress of VALENZUELA.

121. That CENTENNIAL's conduct constitutes intentional, malicious, willful, and wanton acts.

122. As a result of CENTENNIAL's conduct, VALENZUELA has been damaged in excess of $15,000.00, and in an amount to be determined at trial.

123. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

//
//
//
//

**EIGHTH CLAIM FOR RELIEF**
**(Negligent Infliction of Emotional Distress)**

124. VALENZUELA incorporates by reference the allegations set forth above and below and alleges as follows:

125. CENTENNIAL's behavior towards VALENZUELA including, but not limited to, daily verbal harassment and discrimination based on race, color, national origin, and age, have been extreme, outrageous and was at a minimum negligent.

126. CENTENNIAL's behavior toward VALENZUELA breached this duty by failing to … and …

127. CENTENNIAL and its agents, servants, or employees conduct was severe, extreme, and pervasive and significantly altered the condition of VALENZUELA's enjoyment in life, affecting his psychological wellbeing.

128. As a direct and proximate result of CENTENNIAL's conduct, VALENZUELA suffered emotional distress which caused and will continue to cause VALENZUELA extreme mental and emotional pain and suffering.

129. As a direct and proximate result of the breach of its duties owed to VALENZUELA to prevent such conduct, CENTENNIAL and its agents, servants, or employees unlawfully and willfully subjected VALENZUELA to discriminatory treatment and termination in violation of State Law.

130. As a result of CENTENNIAL's conduct, VALENZUELA has been damaged in excess of $15,000.00, and in an amount to be determined at trial.

131. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

**NINTH CLAIM FOR RELIEF**
**(Negligent Training and Supervision)**

132. VALENZUELA incorporates by reference the allegations set forth above and below and alleges as follows:

133. CENTENNIAL has a duty to properly train and supervise its employees, including ensuring that employees comply with the laws prohibiting race discrimination and harassment and other forms of discrimination, as well as prohibiting acts and courses of conduct amounting to retaliation.

14

134. CENTENNIAL's duty to properly train and supervise extends to all persons it employs.

135. CENTENNIAL's behavior towards VALENZUELA, including but not limited to, racial comments, daily harassment advances, and public humiliation among coworkers have been extreme, outrageous and was at a minimum negligent.

136. CENTENNIAL was informed and aware of the unlawful and negligent actions of its employees through the letter written by Plaintiff VALENZUELA, and the various communications between VALENZUELA and employees of CENTENNIAL.

137. Despite being informed that VALENZUELA was being discriminated against, CENTENNIAL retaliated against VALENZUELA based on legally protected conduct, and CENTENNIAL failed to take any action to protect VALENZUELA's rights.

138. CENTENNIAL failed to properly hire, train, and supervise its agents, servants, or employees herein with respect to retaliation and anti-discrimination laws, among other things when it allowed its employees to discriminate against VALENZUELA with discriminatory treatment and retaliation in violation of Federal and State law.

139. As a result of CENTENNIAL's conduct, VALENZUELA is entitled to damages in an amount in excess of $15,000.00, to be determined at trial.

140. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

**TENTH CLAIM FOR RELIEF**
**(Respondeat Superior)**

141. VALENZUELA incorporates by reference the allegations set forth above and below and alleges as follows:

142. CENTENNIAL is a car dealership where employees work together to sell vehicles to customers. CENTENNIAL has a duty to properly train and supervise its employees, including ensuring that employees comply with the laws prohibiting race discrimination and harassment and other forms of discrimination, as well as prohibiting acts and courses of conduct amounting to retaliation.

143. VALENZUELA, over a four-year period of employment at CENTENNIAL, experienced an unjustifiable amount of discrimination against him on the basis of race, color, national origin, and age.

15

144. Specifically, VALENZUELA faced discrimination against him in the form of daily verbal harassment and retaliation against any complaint VALENZUELA made to CENTENNIAL to address the discrimination.

145. VALENZUALA reported the discrimination and harassment to Nancy Pelayo, the HR director at CENTENNIAL, beginning roughly 6 months before he was constructively terminated.

146. VALENZUELA reported discrimination and harassment to Nancy Pelayo multiple times after his initial reporting.

147. CENTENNIAL failed to address VALENZUELA's discrimination and harassment at any time.

148. CENTENNIAL breached its duty of care by failing to adequately train, supervise, and monitor its employees, to ensure that its employees were in compliance with the laws prohibiting discrimination and harassment on the basis of race, color, national origin, and age.

149. As a direct and proximate result of CENTENNIAL's failure to exercise the standard of care, and its liability under the doctrine of Respondeat superior, VALENZUELA has suffered physical, emotional, and mental harm, including but not limited to anxiety, depression, and physical symptoms manifested from the great levels of stress caused by the daily harassment and discrimination.

150. CENTENNIAL is therefore liable for the actions and inactions of its employees, including Meixner and Nuaenberg, under the doctrine of Respondeat superior, as well as its own breach of care, and should be held accountable for the damages suffered by VALENZUELA as a result of their negligence.

151. VALENZUELA has been required to engage the services of an attorney and is entitled to recover its reasonable costs, attorney fees, and interest therefor.

**JURY TRIAL DEMAND**

152. Pursuant to the Federal Rules of Civil Procedure (FRCP) Rule 38, Plaintiff hereby demands a trial by jury as to all issues.

//

//

//

//

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. That the Court award general compensatory damages for Plaintiff in an amount in excess of $15,000.00, to be determined at trial;

B. That the Court award Plaintiff special damages;

C. That the Court award back pay, reinstatement or front pay if reinstatement is not proper;

D. That the Court award Plaintiff his costs and attorney's fees incurred in connection with this action; and

E. For any other and further relief as the Court deems just and proper.

Dated this 21st day of September 2023

/s/ Jason D. Guinasso
Jason D. Guinasso, Esq.
Alex R. Velto A., Esq.
HUTCHISON & STEFFEN, PLLC
5371 Kietzke Lane
Reno, Nevada 89511
Tel: (775) 853-8746
Fax: (775) 201-9611
jguinasso@hutchlegal.com
avelto@hutchlegal.com

*Attorney for Plaintiff*

## VERIFICATION

I, Victor Valenzuela, declare and state that I am the Plaintiff in this matter. I have read the foregoing Complaint and know the contents thereof; that the same is true of my own knowledge except as to those matters therein stated upon information and belief and as to those matters, I believe the same to be true.

Executed on this 19 day of September 2023.

Victor Valenzuela